# Exhibit 1

FILED
6/10/2019 5:30 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L006393

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
LAW DIVISION**

LIFESTYLE OPTIONS, INC. and MOLLY MICELI, )
)
          Plaintiffs, )
)
      v. )    Case Number _____     2019L006393
)
ADDUS NURSE CARE, INC. and )
ADDUS HEALTHCARE, INC., )
)
          Defendants. )

## COMPLAINT

Plaintiffs LifeStyle Options, Inc. ("LSO") and Molly Miceli ("Miceli") (LSO and Miceli together, "Plaintiffs"), by and through their attorneys, Bryan Cave Leighton Paisner LLP, and for their Complaint against Defendants Addus Nurse Care, Inc. ("ANC") and Addus HealthCare, Inc. ("AHC") (ANC and AHC together, "Defendants"), allege as follows:

1.    This is an action filed by Plaintiffs against Defendants for fraudulent inducement and breach of the implied duty of good faith and fair dealing. In entering into an Asset Purchase Agreement dated November 15, 2017 ("APA"), whereby Plaintiffs sold substantially all of LSO's assets to Defendant ANC, Defendants made material misrepresentations to Plaintiffs as described herein. Had Defendants not made such material misrepresentations, Plaintiffs would not have entered into the APA. Plaintiffs file this action to recover their damages.

## THE PARTIES

2.    At all times relevant herein, Plaintiff LSO was a corporation organized and existing under the laws of the State of Illinois, having its principal place of business at 2300 Warrenville Road, Downers Grove, Illinois.

3.    Plaintiff Molly Miceli is a resident of Elgin, Illinois.

FILED DATE: 6/10/2019 5:30 PM  2019L006393

FILED DATE: 6/10/2019 5:30 PM    2019L006393

4.    Defendant ANC, and at all times relevant herein, has been a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 6801 Gaylord Parkway, Frisco, Texas.

5.    Defendant AHC, and at all times relevant herein, has been a corporation organized and existing under the laws of the State of Illinois, having its principal place of business at 2300 Warrenville Road, Downers Grove, Illinois.

## JURISDICTION/VENUE

6.    The Court has personal jurisdiction over Defendants and venue is proper in this Court pursuant to the forum-selection clause in the APA, which provides: "Each Party hereby irrevocably submits in any suit, action or Proceeding arising out of or related to this Agreement or any of the transactions contemplated hereby to the jurisdiction of any state or federal court located in Cook County, Chicago, State of Illinois." The Court also has personal jurisdiction over Defendants and venue is also proper in this Court because Defendant AHC resides within the State of Illinois, Defendants transact business within the State of Illinois, and because a substantial part of the events giving rise to these claims occurred within this district.

## FACTUAL ALLEGATIONS

7.    Plaintiff LSO was in the business of providing private duty and dependable caregiving support and services to older adults across the Chicagoland area, among other locations. LSO provided customized home care in specialized areas, like dementia, Alzheimer's caregiving, assistive devices, nutrition preparation, and medication management. Founded in 1989 by Miceli, a Registered Nurse, LSO was one of Illinois' largest licensed home care agencies.

8.    At all relevant times, Miceli was the sole shareholder and President of LSO.

2

FILED DATE: 6/10/2019 5:30 PM   2019L006393

9. Between at least May and November 2017, Plaintiffs and Defendants discussed Defendants' potential purchase of substantially all assets of LSO.

10. Unlike Plaintiffs, Defendants lacked meaningful experience in operating a private duty business, which requires management by a team with considerable experience as this industry is highly competitive. Several times, Defendants admitting lacking this knowledge and experience. The private duty business that Defendants had been servicing constituted a minor portion of Defendants' business and had not been successful financially.

11. Leading up to execution of the APA, Miceli, on behalf of herself and LSO, had numerous and extensive conversations with Brad Bickham, Defendants' Chief Operating Officer, and Brian Jones, Defendants' Vice President for Mergers and Acquisitions, who were, at all times, acting on behalf of Defendants.

12. During the course of negotiations of the APA, Defendants, through Mr. Bickham and Mr. Jones, represented that, post-closing, the existing LSO management team would continue to run the LSO business without interference from Defendants and that the LSO management team's directives would be followed. Defendants also represented that the private duty business that had been previously serviced by Defendants would be turned over to LSO.

13. While LSO had other potential acquirers, because of Defendants' representations, Plaintiffs decided to sell LSO to ANC.

14. In consideration of the mutual covenants and agreements contained in the APA, and for other good and valuable consideration and in reliance on the representations made by Defendants, Plaintiffs executed the APA on or about January 1, 2018.

3

FILED DATE: 6/10/2019 5:30 PM   2019L006393

15.     Under Section 2.5 of the APA, the aggregate purchase price for LSO's Assets[1] consisted of a cash payment of $3,441,000.000 plus a Contingent Payment.

16.     The Contingent Payment constituted additional consideration for the sale of LSO's. Assets.   The Contingent Payment entitled LSO "to receive from [ANC] additional contingent cash payments in an aggregate amount of up to One Million Dollars ($1,000,000)." (APA, Exhibit A.)

17.     The Contingent Payment was to be calculated based on certain post-closing Revenue targets, with revenues to be measured between January 7, 2018 and January 5, 2019.  If these Revenues equaled or exceeded $6,500,000, the amount of the Contingent Payment was to equal $1,000,000.   If Revenues equaled or exceeded $6,250,000, the amount of the Contingent Payment was to equal $750,000.  If Revenues equaled or exceeded $6,000,000, the amount of the Contingent Payment was to equal $350,000.  If Revenues were less than $6,000,000, the amount of the Contingent Payment would be $0.  (APA, Exhibit A.)

18.     Prior to closing the APA transaction, LSO's revenues easily exceeded $6,500,000 and the revenue targets set forth in Exhibit A to the APA should have easily been achieved, particularly if Defendants ran the business as they represented they would.  For example, if Defendants turned over to LSO the private duty business that Defendants were servicing pre-closing of the sale transaction, as Defendants represented they would, this would have increased the Revenues to be taken into account for purposes of calculating the Contingent Payment.

19.     As such, Plaintiffs reasonably and foreseeably expected to earn and receive an additional One Million Dollars ($1,000,000) of sale consideration in the form of the Contingent Payment.

---

[1] All capitalized terms not defined herein shall have the meaning as set forth in the APA.

4

FILED DATE: 6/10/2019 5:30 PM    2019L006393

20.     The Contingent Payment represented more than 20% of the total possible purchase price for LSO's assets.

21.     Defendants knew and understood that Defendants' representations, as described above, were material to the calculation of the Contingent Payment and to Plaintiffs' willingness and decision to entered into the APA. Defendants made these representations with the intent to induce Plaintiffs to enter into the APA.

22.     Defendants failed to fulfill their obligations and breached their commitments and representations to Plaintiffs. Defendants did not turn over any private duty business to LSO. Defendants did not involve the LSO management team in any business decisions. Defendants did not follow any directives, or even ask for input on strategic initiatives, from the LSO management team. Defendants interfered with LSO's business by, among other things: failing to approve new positions and failing to allow LSO to fill key positions (including in the sales department), eliminating salaries and bonus plans for sales personnel; and failing to address personnel changes.

23.     While Miceli was retained as a "consultant" to Defendants, her role was authority as she was given no authority, let alone the authority Defendants had represented she would have, to manage the LSO business.

24.     In doing so, Defendants essentially diverted revenue from LSO's operations to Defendant's own private duty business.

25.     Micelli regularly raised concerns with Defendants regarding Defendants' ongoing failure to allow the LSO management team to run or manage LSO's operations, but no response was ever received.

26.     As a result of Defendants' failure to honor their commitments and representations

5

FILED DATE: 6/10/2019 5:30 PM 2019L006393

to Plaintiffs, LSO's business collapsed after the APA was executed. The Revenues fell below $6,000,000 and Plaintiffs did not receive a penny of the contemplated Contingent Payment.

27. Had Defendants acted in accordance with their pre-closing representations to Plaintiffs, Plaintiffs would have been entitled to $1,000,000 in additional sale consideration.

28. In the alternative, had Defendants informed Plaintiffs that Defendants did not intend to operate LSO in substantially the same manner as LSO had been operating for decades, Plaintiffs would not have entered into the APA with Defendants at the purchase price ultimately agreed upon.

29. Similarly, had Defendants not made material representations about how LSO would be operated post-closing, Plaintiffs would not have entered into the APA with Defendants at the purchase price ultimately agreed upon.

30. In entering into the APA, Plaintiffs relied upon the material representations made by Defendants. Plaintiffs fully performed under the terms of the APA.

31. Despite repeated demands for payment, Defendants have refused to pay the monies they owe to Plaintiffs.

32. The APA provides that, "[i]n the event of any controversy, claim or action being filed or instituted between the Parties to enforce the terms and conditions of this Agreement, or arising from the breach of any provision hereof . . . the prevailing Party in any final non-appealable action shall receive from the other Party or Parties all costs, damages, expenses, including reasonable attorneys' fees (including, but not limited to, fees on appeal), incurred by the prevailing Party." (APA, § 10.10(b).)

6

FILED DATE: 6/10/2019 5:30 PM 2019L006393

## COUNT I

### (FRAUDULENT INDUCEMENT)

33.     Plaintiffs incorporate the allegations in paragraphs 1 through 32 of the Complaint as though fully set forth herein.

34.     Defendants falsely represented that, post-closing, the LSO management team would continue to run the LSO business without interference from Defendants and that the LSO management team's directives would be followed.  Defendants also represented that the private duty business that had been previously serviced by Defendants would be turned over to LSO. These were statements of material fact.

35.     At the time of the false misrepresentations, Defendants knew that the representations they made to Plaintiffs were false and were made with the purpose of inducing Plaintiffs to enter into the APA.

36.     Plaintiffs reasonably and justifiably relied on Defendants' false misrepresentations to Plaintiffs' detriment, including by entering into the APA with Defendants.

37.     Plaintiffs were deceived into believing that Defendants would fully perform under the APA.

38.     Plaintiffs would not have entered into the APA if certain inducements, promises, and other representations identified herein had not been made by Defendants.

39.     Plaintiffs have suffered damages as a result of Defendants' fraudulent inducement in an amount in excess of $1,000,000, exclusive of interest and costs.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, award Plaintiffs all damages resulting from Defendants' fraudulent inducement,

FILED DATE: 6/10/2019 5:30 PM   2019L006393

and award Plaintiffs attorneys' fees, interest, costs, and such other and further relief as is just and necessary.

**COUNT II**

**(BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)**

40.     Plaintiffs incorporate the allegations in paragraphs 1 through 32 of the Complaint as though fully set forth herein.

41.     In every Illinois contract, an obligation of good faith and fair dealing is implied. The doctrine of good faith and fair dealing requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

42.     Defendants' failure to allow the LSO management team to continue to run the LSO business without interference from Defendants, Defendants' failure to follow the LSO management team's directives, and Defendants' failure to turn over private duty business to LSO constitute breaches of Defendants' obligations of good faith and fair dealing that were implied in the APA.

43.     Defendants' conduct deprived Plaintiffs of Plaintiffs' reasonable expectation of receipt of the full Contingent Payment.

44.     Plaintiffs have suffered damages as a result of Defendants' breach of the duty of good faith and fair dealing, in an amount in excess of $1,000,000, exclusive of interest and costs.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, award Plaintiffs all damages resulting from Defendants' breaches of the duty of good faith and fair dealing, and award Plaintiffs attorneys' fees, interest, costs, and such other and further relief as is just and necessary.

8

FILED DATE: 6/10/2019 5:30 PM    2019L006393

## REQUEST FOR RELIEF

WHEREFORE, LifeStyle Options, Inc. and Molly Miceli request that the Court award to

them the following:

A.    Compensatory damages in an amount to be proven at trial, but believed to be in

excess of $1,000,000.00;

B.    Plaintiffs' costs and attorneys' fees, along with pre and post-judgment interest,

and such other relief as this Court deems just and proper.

Dated: June 10, 2019                     Respectfully submitted,

                                         LIFESTYLE    OPTIONS,    INC.    AND
                                         MOLLY MICELI

                                         By:  ___/s/ Lauren J. Caisman_____
                                               One of Their Attorneys

Brian A. Sher
Lauren J. Caisman
Bryan Cave Leighton Paisner LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Phone: (312) 602-5000
Fax: (312) 602-5050
Brian.sher@bclplaw.com
Lauren.caisman@bclplaw.com
Firm ID 40886

9

FILED DATE: 6/10/2019 5:30 PM   2019L006393

FILED
6/10/2019 5:30 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L006393

5362234

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### LAW DIVISION

LIFESTYLE OPTIONS, INC. and MOLLY MICELI,       )
                                                )
                Plaintiffs,                     )
                                                )
        v.                                      )       Case Number _____
                                                )
ADDUS NURSE CARE, INC. and                      )
ADDUS HEALTHCARE, INC.,                         )
                                                )
                Defendants.                     )

### AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

I, Molly Miceli, Plaintiff in the above-referenced matter, having been duly cautioned and sworn, depose and state as follows: Pursuant to Supreme Court Rule 222(B), I certify that the total money damages sought in this matter does exceed Fifty Thousand and 00/100ths Dollars ($50,000).

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedures, the undersigned certifies that the foregoing statements in this Affidavit are true and correct.

_____
MOLLY MICELI

2
12669399.1

Civil Action Cover Sheet - Case Initiation           (05/27/16) CCL 0520

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

LIFESTYLE OPTIONS, INC. and MOLLY MICELI

v.

ADDUS NURSE CARE, INC. and ADDUS HEALTHCARE, INC.

No. **2019L006393**

FILED DATE: 6/10/2019 5:30 PM  2019L006393

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☐ Yes ☒ No

> FILED
> 6/10/2019 5:30 PM
> DOROTHY BROWN
> CIRCUIT CLERK
> COOK COUNTY, IL
> 2019L006393

(FILE STAMP)

### PERSONAL INJURY/WRONGFUL DEATH

CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (Including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES

CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: Lauren J. Caisman/Bryan Cave Leighton Paisner LLP

  (Attorney)           (Pro Se)

### COMMERCIAL LITIGATION

CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☒ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS

CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

**

Primary Email: lauren.caisman@bclplaw.com

Secondary Email: brian.sher@bclplaw.com

Tertiary Email: chdocketing@bclplaw.com

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the Clerk's Office for this case at this email address: _____

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1